## WEEKS *v.* HILL.

38  199
70  518
38  199
71  148

One who, acting as overseer of the poor of a town, receives money on a contract made by him in behalf of the town with the principal defendant, which is illegal because against public policy, cannot be held as his trustee after the money has been entered on the account of the overseer to the credit of the town.

An agreement between the overseer of the poor and a husband whose wife is supported as a town charge, that the town will refrain from making opposition to a libel for divorce filed by the husband against the wife, is against public policy, and void.

The town may be charged as trustee of the husband, at the suit of one who was a *bona fide* creditor at the time of the receipt of the money under such illegal contract; it being made to appear that the husband was then

insolvent, or in embarrassed circumstances; but the amount for which the town is to be charged is to be determined, as in the case of a voluntary conveyance by the debtor, upon an equitable adjustment of the mutual claims between the husband and the town.

Where, by the terms of the illegal agreement, the money received under it was to be applied by the town to liquidate past expenses in support of the wife, and to indemnify against her future support, the town is entitled to retain so much as may be necessary to defray the expenses of her support while the husband continues liable for it.

THE plaintiff brought his action against the defendant, and summoned John J. Morrill and the town of Gilford as his trustees. In the disclosure made by Morrill, it appeared that he was overseer of the poor of the town of Gilford for the year 1856–7, and as such officer, on the 14th day of January, 1857, received from one Gale the sum of four hundred dollars, which had before that been deposited with Gale by one Thomas Weeks, acting in behalf of Hill, the defendant, under the following agreement between Morrill, acting for the town as overseer of the poor, and said Hill and Thomas Weeks; that said money should be paid over to the town in case Hill obtained a divorce from his wife, then pending, she being supported by the town as a public charge, and that if paid over to the town it should be applied to the payment of expenses already incurred in the support of the wife, and the balance to indemnify the town against future expenditures for her support; and that in consideration of the deposit of this sum for the use of the town, under those stipulations, the town should make no opposition to the application for a divorce, as Morrill said they proposed to do; and further, that if the divorce should not be obtained, then the money should be paid back to Thomas Weeks. It further appeared, in Morrill's disclosure, that the money was advanced by Thomas Weeks for Hill, and his promissory note given to Weeks for the amount; that the divorce was obtained, the money paid over to Morrill by Gale, and the amount credited on Morrill's account to the town, before the com-

mencement of the suit; that no agreement was made on the part of the town relative to the support of the wife, except that the money remaining, after paying the expenses already incurred in her support, should be held as an indemnity for further expenses to which the town might be subjected, and that the wife continued to be supported by the town for some time after the divorce was obtained. ·

The same facts appeared in the disclosure of the town, with the additional facts that Morrill acted as receiving and disbursing agent of the town, in reference to the receipts and expenditures on account of the poor, and that when he received the four hundred dollars, he had paid out of his own funds about one hundred dollars for the town, which appeared on the debit side of his account, and that he credited the four hundred dollars to the town on account, and paid it out for the town during the remainder of his term of office, and had a balance against the town on the account, at the close of his year; and that it was denied by the town that Hill was insolvent, or in embarrassed circumstances, when the money was paid over by him to Gale, or when it was finally paid to the town. It was agreed by the parties, by a memorandum in writing appended to the disclosures, that if, in the opinion of the court, the question of the insolvency of Hill, at the time the agreement was made and the money deposited, was material in determining the question of the liability of the trustees, the disclosures should be opened for further proceedings. The question of the liability of the trustees was submitted to the court upon the disclosures.

*C. R. Morrison,* for the plaintiff.

There was no consideration for the payment of the four hundred dollars, beyond the amount of the expenses which had then been incurred in the support of the wife. There was no engagement by the town, binding them to support

the wife. If there had been, and no other objection existed, it would not be valid as against creditors. It would in that case be in effect an arrangement by which the property of the debtor would be laid away for the future support of the wife. This could not be done to the prejudice of creditors.

The whole arrangement was against the policy of the law. It was founded upon an illegal consideration, because the agreement to forbear making opposition to the divorce, which constituted, in part or in whole, the consideration for the payment, was one designed and adapted to promote and facilitate a dissolution of the marriage relation. The town, being interested in the question of support of the wife, would have had the right, but for the contract, to appear and oppose the divorce, and their opposition might have prevented it. *Sayles* v. *Sayles*, 21 N. H. (1 Fost.) 312. The money received on such illegal contract may not be recovered back by the party, but it may be reached by creditors, as in the case of a conveyance without any consideration. *Everett* v. *Read*, 3 N. H. 55; *Kimball* v. *Fenner*, 12 N. H. 248; *Jewell* v. *Porter & Rolfe*, 31 N. H. (11 Fost.) 34.

*H. A. Bellows*, for the trustees.

There was an existing liability on the part of the town, against which it was proper and legal that they should have indemnity; and the four hundred dollars were advanced as security against it, in place of a bond of indemnity, or other paper security. It was not a provision for the support of the wife, but a security given to the town, to indemnify them against the support of the wife, then chargeable to the town, and then being in fact supported by the town.

The agreement was not against public policy, as the town owed no duty, and had no power in reference to the divorce.

SAWYER, J.   Upon the disclosure of Morrill, he must be discharged.   In the receipt of the four hundred dollars, and in the transactions which resulted in the payment of that sum to the town, he was acting only as the town's agent.   If, at any time, he had the money under such circumstances that it could be attached in his hands, at the suit of Hill's creditors, it must have been, if at all, before it had been passed to the credit of the town, and thus made their money.   This was in fact done before the service of the writ upon him.   He had then, in effect, delivered over the money to the town, in accordance with the agreement under which he received it, by entering it upon his account with the town, to their credit.   This was the only way in which it could be paid over by him, as the receiving and disbursing agent of the town.   When he had thus credited it, he stood in no other relation to it than as the depositary of the town's money, and he could in no view be regarded as the trustee of Hill.

As to the liability of the town, the first question to be considered is, whether the four hundred dollars was paid upon a consideration in whole or in part illegal, because against public policy.   Whether the illegality extends to the whole or only a part of the consideration, is immaterial.   The contract was entire, and in such case the whole is void, if tainted with illegality in any part.   *Carlton* v. *Whitcher*, 5 N. H. 196; *Hinds* v. *Chamberlain*, 6 N. H. 225; *Clark* v. *Ricker*, 14 N. H. 44.

The agreement disclosed between Morrill, acting in behalf of the town, and the principal defendant, Hill, is in substance that the town, having an interest in the question of divorce, as incidentally affecting their liability to support the wife, agree to refrain from making opposition to the libel, if Hill would deposit the four hundred dollars with Gale, under the stipulation that it was to be paid over to the town if the divorce was obtained, and to be applied to the payment of the expenses already incurred in the sup-

port of the wife, and the balance to be held as an indemnity against future expenses. This agreement is clearly against the policy of the law, as being one entered into for promoting and facilitating the dissolution of the marriage relation between the parties to the libel. The principle upon which the case of *Sayles* v. *Sayles*, 21 N. H. (1 Fost.) 312, was decided, applies here. That was the case of a promissory note, given in consideration of the libellee's forbearing to claim alimony out of the estate of the libellant, when the ground for claiming it was such as would constitute a defence to the libel. In that case, it appeared that the defence, if presented, would have defeated the decree. That fact, however, was not material to the point of the decision. The doctrine of the case is, that an agreement, having for its object the dissolution of the marriage contract, and designed to facilitate that result, is against the policy of the law. Here the town had an interest in defeating the decree, and proposed to make opposition to it. With the consent of the libellee, and probably, on application to the court, without it, they would have been authorized to resist the application in her name. They might have presented a defence which would have defeated it. The object and purpose of the agreement was to bind the town to withhold opposition, and thus facilitate the divorce, by refraining to oppose it, when their opposition might have developed facts material to be known in order to a proper determination of the cause. This was a fraud upon the law, the policy of which is to guard and uphold the marriage relation with a watchful vigilance. Upon principles of public policy, contracts which provide for bringing about a marriage between two parties for a reward, called marriage brokage contracts, are held void, as tending to improvident and ill advised matches. *Drury* v. *Hook*, 1 Vern. 412; *Williamson* v. *Gihon*, 2 Sch. & Lef. 357; *Smyth* v. *Aykerill*, 3 Atk. 566; 1 Story's Eq., sec. 260. And when the marriage relation has been assumed, it is equally the policy of the law to

sustain and uphold it. It therefore holds all contracts void which contemplate or provide for the future separation of the parties, or which are calculated to prevent future reconciliation; Chit. on Cont. 673; or which aim at effecting a dissolution of the marriage contract, except by a proper administration of the law, in the due course of judicial proceedings.

But, though the contract was void, Hill cannot recover back the money paid under it, in a suit against the town. *Hanson* v. *Hancock*, 8 T. R. 575. The parties being in *pari delicto*, are left by the law where, by the contract and their proceedings under it, they have left themselves. Bul. Nisi Prius 131; *Tennant* v. *Elliot*, 1 B. & P. 3; *Farmer* v. *Russell*, 1 B. & P. 278. The legal maxim, *potior est conditio possidentis*, applies in such case. One who has freely paid his money upon an illegal contract is *particeps criminis*, and no cause of action arises in his favor upon an implied promise to repay it. But when an insolvent debtor, or one in embarrassed circumstances, pays his money upon such illegal consideration, he stands in relation to his creditors in the same position as if he had made a voluntary conveyance of his property. In contemplation of law, he has in fact parted with his money for no consideration; 1 Story Eq., secs. 353, 354; *Clark* v. *Gibson*, 12 N. H. 386; because it is no consideration which can be set up in a court of law. No one, however, but a *bona fide* creditor at the time of his thus parting with it, has the right to interfere unless the conveyance was fraudulent in fact, as made with the intent to defraud creditors, and then subsequent creditors may also interpose. Here there is no pretence of an intention to defraud, and there is nothing to show that the plaintiff was a creditor at the time the money was agreed to be paid, nor indeed at any subsequent time; nor that Hill was insolvent, or in embarrassed circumstances. But as the disclosure, by agreement of the parties, is to be opened for further proceedings, if the question as to

the insolvency or embarrassed condition of Hill should be held to be material, and as this may be material, upon its being made to appear by proper evidence that the plaintiff was a creditor at the time of the illegal agreement, it may be necessary to consider whether the town is to be held chargeable for the whole amount received under the illegal agreement, or as, in other cases, for the balance, after applying so much as may be necessary to any claims which appear to exist in their favor against Hill. The ground upon which the town is to be held chargeable, if at all, is that, having received the money of an insolvent debtor, upon an illegal consideration, they hold it subject to the claims of his creditors, because they cannot be permitted to set up the illegal contract in a court of law as the consideration upon which they received it. But they may set up any legal claim to it, as against creditors, for which they are not compelled to resort to the illegal agreement. The effect of the illegality in the contract is to place them, in respect to creditors, precisely in the situation in which they would stand if they had received and held the money without consideration; and if they had so received it, the extent to which they would be held chargeable would be for the balance after adjusting the equities between them and Hill. To hold that they should be chargeable for the whole amount, regardless of those equities, would be to subject them to a penalty in this suit for entering into the illegal agreement. *Hutchins* v. *Sprague*, 4 N. H. 469; *Boardman* v. *Cushing*, 12 N. H. 105. They can be placed in no worse position in this case, as Hill's trustee, than if they had merely disclosed that they had four hundred dollars of his money in their hands, but had a claim against him for expenses incurred in the support of his wife. There is nothing in the disclosure to show that, during all the time the wife was supported by the town down to the time of the divorce, Hill was not liable for her support. The terms of the agreement amount to an

Weeks *v.* Hill.

admission by him of his liability. It must be presumed that the support was furnished when he should have supplied it, and for this the town have their right of action against him. *Tibbets* v. *Hapgood,* 34 N. H. 420; *Rumney* v. *Keyes,* 7 N. H. 571. But they have no right, as against the creditors of Hill, if he is shown to have been in embarrassed circumstances, to retain the money as an indemnity against the expenses of the wife's support, subsequently to the divorce. The husband then ceased to be liable for her support, and the town would have no legal claim against him on that account. Their only ground for retaining it to be so applied, is that Hill so agreed with them, upon the illegal consideration that they would forbear to oppose the divorce. The town, therefore, may be held liable for any balance of the four hundred dollars, after satisfying the expenses incurred in the support down to the time of the divorce, if the insolvency or embarrassed condition of Hill, and a *bona fide* indebtedness from him to the plaintiff, shall be made to appear. Leave is given to the plaintiff to move that the disclosures be opened.